```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
IMAD JOHN BAKOSS, M.D.,                      :
                                             :
                    Plaintiff,               :     **MEMORANDUM & ORDER**
                                             :
        -against-                            :     10-CV-1455 (DLI)(LB)
                                             :
CERTAIN UNDERWRITERS AT                      :
LLOYDS OF LONDON ISSUING                     :
CERTIFICATE NO. 0510135,                     :
                                             :
                    Defendant.               :
----------------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Imad John Bakoss, M.D. ("Bakoss") initiated this action in state court against Defendant Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135 ("Underwriters") seeking $550,000 in disability benefits pursuant to the terms of the above-named policy. Defendant removed the instant action to this court pursuant to 28 U.S.C. § 1331, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.* (the "FAA"). (Docket Entry 1, Notice of Removal ¶ 7.). Defendants now move pursuant to Federal Rule of Civil Procedure 56(c) for summary judgment dismissing the complaint, or, in the alternative, for an Order compelling Plaintiff to submit to arbitration pursuant to 9 U.S.C. § 1 *et seq.* Plaintiff opposes the motion, and moves to remand this case to state court, arguing that this court lacks jurisdiction. For the reasons set forth below, the court grants Defendants' motion for summary judgment and denies Plaintiff's motion in its entirety.

## BACKGROUND

Bakoss is a licensed medical doctor specializing in pulmonary and internal medicine who claims to have retired from the practice of medicine due to permanent coronary artery disease.

(Notice of Removal ¶ 2; Bakoss Aff. ¶ 2.) Underwriters is comprised of numerous individuals and/or corporations or other juridical entities, at least one of which is a citizen or subject of a nation other than the United States, that are the underwriters and issuers of the insurance policy at issue. (Notice of Removal ¶ 1; Compl. ¶ 2.)

Defendants issued Plaintiff a Certificate of Insurance ("Certificate") against permanent total disability, with effective dates of January 20, 2005 through January 20, 2008, to provide coverage for his obligation to repay a bank loan if he became disabled. (Aff. of H. Nicholas Goodman ("Goodman Aff.") Ex. A; Bakoss Aff.., Ex. A (both, the "Certificate"). The Certificate provided for payment of a Principal Sum Benefit to Plaintiff in the event he became "Permanently Totally Disabled," which was defined in the Certificate as follows: "Permanent Total Disability means that, in the opinion of a Competent Medical Authority [y]ou will not recover from the effects of a Sickness or Injury to the extent that [y]ou will ever be able to resume the Material and Substantial duties of Your occupation." (Certificate at 3.) The Certificate was amended by Endorsement effective January 20, 2005 as follows: "Total Disability means that as a result of sickness or injury you cannot perform in any professional capacity as a medical doctor." (Certificate at 12.)

The Certificate contains the following Notice of Claim provision:

Written notice of a claim must be given to us within twenty (20) days after the date of potential qualifying loss, or as soon after that as is reasonably possible. Notice given to the Coverholder which is sufficient to identify You will be deemed sufficient notice.

(Certificate at 8.)

Plaintiff communicated his intent to claim benefits under the Certificate in either late July or August 2007. (*Compare* Def. Local Rule 56.1 Stmt. of Facts ("Def. 56.1 Stmt.") at ¶ 4 *with* Pl. Resp. to Local Rule 56.1 Stmt. of Facts ("Pl. 56.1 Resp.") at ¶ 4.) In the "Insured's Statement

– Details Outlining Proof of Loss for Disability Insurance" ("Insured's Statement"), dated August 9, 2007, Plaintiff claimed October 7, 2006, as "Date First Noticed Sickness" and October 9, 2006 as "Date First Consulted Physician," as well as the date upon which he became permanently totally disabled and his last day of work. (Goodman Aff. Ex. B).

On or about August 20, 2007, Defendants received an Attending Physician's Statement dated July 10, 2007, signed by Dr. John Sayad ("Sayad") stating that Plaintiff suffered from "severe chest pain angina pectoris multiple acute myocardial infarctions" that began on October 9, 2006 and that Plaintiff was permanently totally disabled as of that date. (Goodman Aff. at ¶ 12, Ex. C.) In an accompanying letter, Sayad confirmed Plaintiff's "total permanent disability" as of October 9, 2006, opining that "the permanency of his condition is spelled out by the recurrent nature of his symptoms and the fact that his anaphylactic fish allergy does not allow for any contrast angiography, which is necessary for any interventional cardiac therapies." (*Id*.)

In a response to Plaintiff, dated August 30, 2007, Defendants cited the Certificate's "Notice of Claim" provision and requested an explanation for Plaintiff's delay in reporting the claim. (Goodman Aff. Ex. D.) Several subsequent letters, dated September 18, 2007, October 19, 2007, November 21, 2007, December 21, 2007, and February 15, 2008, reiterated Defendants' request for an explanation for Plaintiff's delay in reporting the claim. (Goodman Aff. Ex. E.)

On March 14, 2008, Defendants wrote to advise Plaintiff of their position. (*See* Goodman Aff. Ex. F.) Citing to relevant policy language, the letter explained that, because it was unclear to Defendants whether Plaintiff fell within the policy definition of permanently totally disabled, Plaintiff was requested to submit to examinations by an allergist and a cardiologist. (*Id*. at 7.) Citing to the Notice of Claim provision, the letter further stated that

Defendants "continue[] to reserve their right to deny coverage for failing to give immediate advice to [Defendants] of the potential loss . . . ." (*Id*. at 8.)

By letter dated April 2, 2008, counsel for Plaintiff addressed the notice of claim issue. (Goodman Aff. Ex. G.) Citing to the Elimination Period provision in the Certificate,[1] counsel maintained that, since the first day of the elimination period was October 9, 2006, Plaintiff's potential qualifying loss did not occur until October 2007, and thus Plaintiff's claim was timely filed. (*Id*.)

Plaintiff subsequently underwent two independent medical examinations arranged by Defendants. On July 2, 2008, Bernard A. Feigenbaum, M.D. ("Feigenbaum"), an allergist, examined Plaintiff to address his fear of a serious allergic reaction to the radiocontrast media ("RCM") used in cardiac intervention studies. (*See* Goodman Aff. Ex. J.) Feigenbaum reported that while Plaintiff has a history suggestive of a possible food allergy to shellfish or fish, he has not undergone any testing to confirm such results. (*Id*. at 4.) Feigenbaum explained that, in the past, it was believed that a food allergy to fish or shellfish significantly increased the risk of an adverse reaction to RCM, due to iodine content, but the allergy literature no longer supports this conclusion. (*Id*. at 5-6.) Feigenbaum further opined that, if one had further concerns about the "mildly increased risk" of adverse reactions to RCM in "allergic individuals" and wanted to decrease the risk of an adverse reaction, possible prophylactic treatment options exist. (*Id*. at 6.) Feigenbaum concluded: "Because of all the issues that relate to Allergy, consultation with a treating allergist, preferably one who specializes in RCM allergy, would be suggested." (*Id*.)

On September 25, 2008, Jeffrey Rade, M.D. ("Rade"), an Interventional Cardiologist, examined Plaintiff. (Goodman Aff. Ex. K.) Rade opined that, while Plaintiff likely has some

---

[1]Elimination Period is defined as "the number of consecutive days [y]ou are Totally Disabled . . . before a benefit is payable. The Elimination Period begins on the first day [y]ou are attended by a Physician who determines [y]ou to be Totally Disabled . . ." (Certificate at 3.)

degree of coronary artery disease, "[h]ow extensive that disease is, how likely it is to account for the severity of his symptoms and what the best treatment and/or revascularization options might be are unclear given his refusal to undergo coronary angiography out of a fear of experiencing a reaction to radiocontrast dye." (*Id*. at 7.) Rade concluded: "While Plaintiff appears to have some element of disability due to recurrent chest pain, at present I do not believe that he can truly be considered completely and totally unable to perform in any professional capacity as a physician." (*Id*. at 9.) Rade based his opinion on Plaintiff's continued treatment of patients in his office after the date the disability is alleged to have begun and continuing through the date of Rade's examination, as well the objective findings of the stress echocardiogram, which indicate that Plaintiff "likely has the physical capacity to reasonably function as a physician without objective evidence of inducible ischemia." (*Id*. at 10.)

A letter dated February 10, 2009 advised Plaintiff that his claim was not covered by the policy, or was excluded from coverage. (Goodman Aff. Ex. I.) More specifically, the letter advised that Defendants did not agree to coverage because Plaintiff had not satisfied the definition of Permanently Totally Disabled, "since without proper cardiac catheterization, it would be impossible to confirm the full extent of [his] alleged condition, if any, and whether it [was] permanent in nature." (*Id*. at 10.) Defendants maintained that Plaintiff's alleged condition, if any, can be corrected with proper medical treatment should he submit to cardiac catheterization. (*Id*. at 10-11.) Furthermore, the Certificate requires that, as a result of Total Disability, the insured cannot perform in any professional capacity as a medical doctor, and Plaintiff admittedly continued to work as a medical doctor up until sometime after the expiration of the policy in 2008. (*Id*. at 11.) Finally, Plaintiff's claim was submitted on August 9, 2007, "nearly ten (10) months after [his] alleged date of loss," and, as such, Defendants "den[ied] any

5

obligation to indemnify [Plaintiff] for failing to effectuate timely notice of this claim." (*Id*. at 15.)

Plaintiff subsequently invoked the formal review process provided for in the Grievance Procedures of the Certificate. (Goodman Aff. at ¶ 29; *see* Certificate at 10.) On December 1, 2009, Defendants completed their formal review and advised Plaintiff that Defendants continued to maintain that Plaintiff was not entitled to benefits under the Certificate. (Goodman Aff. at ¶ 30.) In subsequent correspondence, Defendants invoked the Certificate's Third Physician Provision, because of Plaintiff's continued claim of permanent disability. (*See* Goodman Aff. at ¶ 31, Ex. L.) That provision states:

> Benefits will be paid if it is determined by the Physician providing your Regular Care that You are Permanently Totally Disabled. We reserve the right to have You examined by a Physician of Our choice. Should your Physician and Our Physician not be able to agree that You are Totally Disabled, Your Physician and Our Physician shall name a third Physician to make a decision on the matter which shall be final and binding.

(Certificate at 6.)

In a letter dated December 2, 2009, Plaintiff refused to comply with the third physician provision unless Defendants conceded coverage and challenged only whether Plaintiff is permanently and totally disabled. (*See* Goodman Aff. Ex. L.) Shortly thereafter, Plaintiff commenced this action in the Supreme Court of the State of New York, Richmond County, seeking a declaratory judgment that there is coverage for Plaintiff under the Certificate, and damages of $550,000, as well as interest and costs. (Goodman Aff. Ex. M.) Defendants removed the action pursuant to 28 U.S.C. § 1331, the Convention and the FAA. (Goodman Aff. Ex. N., Notice of Removal).

# DISCUSSION

## I. Subject Matter Jurisdiction

Defendants assert that the court has subject matter jurisdiction under 28 U.S.C. § 1331 by virtue of the federal question raised by application of the Convention, which is implemented by Chapter Two of the FAA, 9 U.S.C. §§ 201 - 208. (Def. Opp. to Rem. at 1.) Plaintiff moves to remand the case to state court, arguing that the FAA does not apply, and therefore this court lacks jurisdiction. (*See* Pl. Mot. Rem. at 1-2)

The requirement that jurisdiction be established as a threshold matter is "inflexible and without exception." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998). *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). The Second Circuit has reiterated that jurisdictional questions should be addressed in the first instance by the District Court. *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 203 (2d Cir. 2005). This obligation extends to removal cases. *McRae v. Arabian American Oil Co.*, 293 F. Supp. 844, 846 (S.D.N.Y. 1968).

*A. Federal Jurisdiction, the Convention and the FAA*

Federal question jurisdiction is invoked where the plaintiff's claim arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. 9 U.S.C. § 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States."

"The goal of the Convention is to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions." *Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 92 (2d Cir. 1999). The adoption of the Convention by the United States promotes the strong federal policy favoring arbitration of disputes, particularly in the international context. *Mitsubishi*

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638-40 (1985). *Accord Republic of Ecuador v. Chevron Corp.*, 638 F.3d 391 (2d Cir. 2011).

The Convention and the implementing provisions of the FAA set forth four basic requirements for enforcement of arbitration agreements under the Convention: (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope. *See Cargill Int'l S.A. v. M/T Pavel Dybenko,* 991 F. 2d 1012, 1018 (2d Cir. 1993); *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F. 2d 245, 249-50 (2d Cir. 1991).

The Second Circuit has held that "when we exercise jurisdiction under Chapter Two of the FAA, we have compelling reasons to apply federal law, which is already well-developed, to the question of whether an agreement to arbitrate is enforceable." *See Smith/Enron*, 198 F. 3d at 95. *See David L. Threlkeld & Co*, 923 F. 2d at 249-50; *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 299 n.5 (S.D.N.Y. 1997). Where there is a question as to whether claims are arbitrable, federal arbitration policy requires that "any doubts . . . be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983); *see also Louis Dreyfus Negoce, S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 223 (2d Cir. 2001).

B. *Removal pursuant to Section 205*

9 U.S.C. § 205 provides that:

Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district or division embracing the place where the action or proceeding is pending…[T]he ground for removal provided in this section *need not appear on the face of the complaint but may be shown in the petition for removal*.

9 U.S.C. § 205 (emphasis added). *Vaden* notes that while Chapter 2 of the FAA expressly grants

federal courts jurisdiction to hear actions seeking to enforce an agreement or award falling under the Convention, FAA § 205 "goes further" and overrides the well-pleaded complaint rule *pro tanto*, *Vaden v. Discover Bank*, 556 U.S. 49, --, 129 S. Ct. 1271 fn.9 (2009). *Accord Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 268-69 (2d Cir. 1996) (noting that when Congress has intended to create an exception to the "well-pleaded complaint rule," it has done so explicitly, as in 9 U.S.C. § 205).

Although the Second Circuit has not addressed the issue of removal pursuant to § 205 except in dicta,[2] numerous courts in the Circuit have exercised § 205 removal jurisdiction. *See Bogdan Dumitru v. Princess Cruise Lines, Ltd.,* 2 F. Supp.2d 328 (S.D.N.Y. 2010), *Celulosa Del Pacifica S.A. v. A. Ahlstrom Corp.*, 1996 WL 103826, at *1, 3 (S.D.N.Y. Mar. 11, 1996), *JF Surgutneftegaz v. President and Fellows of Harvard College*, 2005 WL 1863676, *2 fn.3 (S.D.N.Y. Aug. 3, 2005), *York Hannover Holding A.G. v. American Arbitration Association*, 794 F. Supp. 118, 122-23 (S.D.N.Y. 1992). *Cf. Samsun Logix Corp. v. Bank of China*, 740 F. Supp. 2d 484, 487 (S.D.N.Y. 2010) (removal pursuant to Convention unwarranted where arbitration had already been completed.)

Noting at the outset that the Second Circuit had not addressed the issue specifically, the court in *Banco de Santander Cen. Hispano, Inc,* engaged in a thorough and well-reasoned analysis of the language of § 205, the relevant case law, and the legislative history, and adopted a "broad" interpretation of § 205. 425 F. Supp. 2d 421, 428 (S.D.N.Y. 2006). The court in *Banco* focused its discussion on *Beiser v. Weyler,* 284 F. 3d 665, 667 (5th Cir. 2002), where the Fifth Circuit held that a district court will have jurisdiction under § 205 "over just about any suit in

---

[2]Dicta in *International Shipping Co. v. Hydra Offshore, Inc.* suggests that the Convention is enforceable where the party invoking its provisions seeks "either to compel arbitration or to enforce an arbitral award," 875 F. 2d 388, 391 n.5 (2d Cir. 1989). *Chevron Corp.*, 638 F.3d at 391 fn.6.

9

which a defendant contends that an arbitration clause falling under the Convention provides a defense." 284 F. 3d at 669. The court in *Banco* reasoned that if § 205 removal were limited to only state court actions seeking to compel arbitration or confirm an arbitration award, Congress would not have needed to expressly abrogate the well-pleaded complaint rule. As such, the court in *Banco* held that Congress expressly granted removal jurisdiction to a class of state court actions, even where plaintiffs did not expressly plead claims under the Convention, *i.e.*, alleging only state claims or setting out a vacatur action, so long as defendants could articulate a "federal defense" "related to" the Convention. *Id.* at 430.

C. *The "Arbitration Clause"*

The key issue here is whether Defendants have established that the insurance policy at issue contains an arbitration clause that falls under the Convention and provides a defense to the instant action. Defendants' petition for removal states, in pertinent part:

> This dispute is commercial and contractual, and pertains to a written contract, and at least one contracting party is not a citizen of the United States, and the written contract contains provisions requiring binding arbitration of a dispute that has arisen between the parties.

(Notice of Removal at ¶ 6.) Defendants maintain that this dispute, including "any threshold issue of arbitrability," is governed by the Convention. (Notice of Removal at ¶ 7) More specifically, Defendants contend that a dispute has arisen regarding the determination of Plaintiff's medical condition, and that the third physician provision of the Certificate constitutes an arbitration provision. Moreover, because Plaintiff continues to claim disability, but refuses to proceed with the third physician provision, Defendants assert they are entitled to a Declaration and Order compelling arbitration. (*See* Def. Reply in Supp. of Sum. Jmt. at 8.)

In determining whether the agreement in question is in fact an agreement to arbitrate, the issue posed is whether "a controversy" would be "settled" by the process set forth in the

10

agreement. *AMF Inc. v. Brunswick Corp.*, 621 F. Supp. 456 (E.D.N.Y. 1985). In *AMF*, the clause in question stated, in part, that "[b]oth parties agree to submit any controversy which they may have . . . to such advisory third party for the rendition of an advisory opinion. Such opinion shall not be binding upon the parties, but shall be advisory only . . . ." *Id*. at 458. Conceding that the term arbitration "eludes easy definition," (*Id*. at 459), U.S. District Judge Jack B. Weinstein of this court concluded that case law developed following the passage of the FAA "reflects unequivocal support to have third parties decide disputes – the essence of arbitration," *Id.* at 460. Moreover, "[n]o magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute resolution' are needed to obtain the benefits of the [FAA];" thus, if the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration. *Id*; *See also McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co*., 858 F. 2d 825 (2d Cir. 1988) (where provision called for the appointment of an independent tax counsel to resolve certain disputes, the fact that the contract language did not employ the word "arbitration" was "irrelevant").

The third physician provision at issue states, in relevant part, "[s]hould your Physician and Our Physician not be able to agree that You are Totally Disabled, Your Physician and Our Physician shall name a third Physician to make a decision on the matter which shall be final and binding." (Certificate at 6.) Here, although Plaintiff continues to pursue his claim for Total Disability, he refuses to participate in a previously agreed upon procedure for settling that controversy. The provision requires that a physician for each party name a third Physician who will make a final and binding decision on the matter of Plaintiff's disability. Neither party here disputes that an enforceable contract was formed. In agreeing to the terms of the contract, both parties agreed to this mechanism for resolving disputes as to the disability determination. Thus, heeding the presumption in favor of arbitration as described in *Moses H. Cone*, *supra*, at 24-26,

this court construes the third party physician provision in the Certificate as an arbitration clause. As such, Defendants have established the existence of an arbitration agreement falling under the Convention, and properly have moved to compel arbitration. Accordingly, this court has subject matter jurisdiction over the action and will proceed to the merits.

## II. Summary Judgment

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," FED. R. CIV. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

Under New York law, "an insurer's duty to indemnify arises under the insurance contract." *Atlantic Casualty Ins. Co. v. C.A.L. Construction Corp.*, 2008 WL 2946060 at *4

(E.D.N.Y. July 30, 2008) (citing *Trans. Ins. Co. v. AARK Constr. Group,* 526 F. Supp. 2d 350, 356 (E.D.N.Y. 2007)). Insurers seeking to deny coverage by virtue of an exclusion "must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Cont. Cas. Co. v. Rapid-Am. Corp.,* 80 N.Y. 2d 640, 652 (1993). Courts interpret exclusions narrowly and resolve "[a]ny ambiguities . . . in favor of the insured." *Marino v. N.Y. Tel. Co.,* 944 F. 2d 109, 112 (2d Cir. 1991); *Cont. Cas. Co.,* 80 N.Y. 2d at 652-55. The insurer bears the burden of showing that the loss claimed by the insured is excluded from coverage. *Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.,* 961 F. 2d 387, 389 (2d Cir. 1992).

Under New York law, an insured must comply with the notice provisions contained in its insurance policy once it is aware of a loss. *Atlantic Casualty Ins. Co,* 2008 WL 2946060 at *7. An insured is deemed to be aware of a loss "once an insured has obtained facts that would cause a reasonable person" to recognize the potential for a claim under its policy. *See, e.g., Utica Mut. Ins. Co. v. Firemen's Fund Ins. Co.,* 748 F. 2d 118, 122 (2d Cir. 1984). The requirement that an insured comply with the notice provision of an insurance policy operates as a condition precedent to coverage. *Trans. Ins. Co.,* 526 F. Supp. 2d at 358. Absent a valid excuse, the failure to comply with the notice requirement vitiates the policy, and an insurer need not demonstrate prejudice before it can assert the defense of noncompliance. *Id*.

Courts evaluate whether an insured provided timely notice under the standard of reasonableness. *Atlantic Casualty Ins. Co,* 2008 WL 2946060 at *7. An insurer establishes unreasonable delay as a matter of law by demonstrating that "(1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." (*Id.* citing *Trans. Inc. Co.*, 526 F. Supp. 2d at 358)*. See, e.g., Safer v. Government Empls. Ins. Co.,* 254 A.D. 2d 344, 345 (2d Dep't 1998) (delay in reporting an occurrence to

insurer more than one month after receiving a complaint amounts to unreasonable delay as a matter of law).

Here, Defendants contend that Plaintiff's delay in notifying Defendants of his "total and permanent disability" constitutes a breach of the notice provision, thus vitiating any duty to indemnify Plaintiff. (Def. Supp. of Sum. Jmt. Mot. at 21-26.) Plaintiff argues that there is a factual issue as to when he "had a reasonable belief that he was permanently disabled to the extent that he would never be able to resume his profession." (Pl. Opp'n to Sum. Jmt. at 7.) Therefore, the court must determine whether Plaintiff's delay in notifying Defendants is unreasonable as a matter of law.

The Notice of Claim provision in the Certificate provides that Plaintiff is required to notify Defendants within twenty days after the date of a potential qualifying loss, or as soon after that as is reasonably possible. (Certificate at 8.) It is undisputed that Sayad determined that Plaintiff had suffered a "permanent total disability" as of October 9, 2006, and it was either July or August 2007 when Plaintiff first communicated his intent to claim benefits under the Certificate to Defendants. Consequently, there was a nine- or ten-month lapse between the date when Plaintiff was declared permanently and totally disabled by Sayad, and that information was communicated to Defendants.

Plaintiff argues that a question of fact exists as to whether he reported the claim within twenty days or as soon as possible from when he reasonably determined he would never be able to resume the material and substantial duties of his profession. (Pl. Opp'n to Mot. for Sum. Jmt. at 9.) As an initial matter, the court notes that the pertinent definition of Total Disability, amended by the Endorsement effective January 20, 2005, is as follows: "Total Disability means that as a result of sickness or injury you cannot perform in any professional capacity as a medical doctor. (Certificate at 12.)

14

Despite Sayad's recommendation that Plaintiff cease practicing medicine after the October 7, 2006 angina attack, (Bakoss Aff. at ¶ 5), Plaintiff was "too proud to retire," (Bakoss Aff. at ¶ 6.) Thus, Plaintiff returned to work, and suffered his first heart attack on October 24, 2006. (Bakoss Aff. at ¶ 6.) After suffering his first heart attack, Plaintiff had Dr. Ashkar, his employee, cover his practice. (Bakoss Aff. at ¶ 7.) On or about March 23, 2007, Plaintiff returned to work to fill in for Dr. Ashkar, and suffered a second heart attack a few hours later. (Bakoss Aff. at ¶ 7.)

Despite having suffered multiple heart attacks, Plaintiff contends he believed his condition would not prevent him from resuming his practice. (Pl. Opp'n to Sum. Jmt. at 12.) Until he submitted his claim in August 2007, Plaintiff attempted to return to his medical practice in some capacity. (*Id*.) Plaintiff alleges he tried to recover and, until the summer of 2007, he believed he would be able to resume his occupation. Thus, he provided notice as soon "as is reasonably possible." (*Id.* at 10.)

In order to qualify for disability benefits under the Certificate, Plaintiff must establish that "as a result of a sickness of injury [he] cannot perform in any professional capacity as a medical doctor." (Certificate at 12.) Plaintiff submitted an Insured's Statement, dated August 9, 2007, signed under penalty of perjury, indicating October 9, 2006 as the date upon which he became totally and permanently disabled. (Goodman Aff. Ex. B.) Yet Plaintiff admits, even in the same Insured's Statement, that he did in fact work after the claimed onset date. (*Id*.) Moreover, on September 5, 2008, during his interview with Rade, Plaintiff admitted continuing to work in the office "several hours a day up to 4 days a week." (Goodman Aff. Ex. K at 5, 10.) If, as he argues, Plaintiff was still working in some capacity after October 9, 2006, then he was not, in fact, permanently and totally disabled as per the terms of the Certificate.

Plaintiff's argument concerning the timing of the "potential qualifying loss" is equally unavailing. Plaintiff contends that the potential qualifying loss was when Plaintiff realized he "could not recover . . . to the extent" he would ever resume the "material and substantial duties" of his profession." (Pl. Opp'n to Sum. Jmt. at 12.) A reasonable person would have recognized a potential qualifying loss when he first was determined by his physician to be permanently and totally disabled. Significantly, Plaintiff does list October 9, 2006 as the onset date of his total and permanent disability in his Insured's Statement.

Defendants have demonstrated that the facts regarding Plaintiff's delay of nearly ten months in reporting his claim are undisputed and Plaintiff has not offered a valid excuse for the delay. Therefore, the court finds that Defendants have established that Plaintiff's delay is unreasonable as a matter of law and, consequently, are not liable to Plaintiff. *Atlantic Casualty Ins. Co,* 2008 WL 2946060 at *7.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for remand is denied, and Defendants' motion for summary judgment is granted in its entirety. Defendants' motion for an order to compel arbitration is denied as moot.

SO ORDERED.

Dated: Brooklyn, New York
       September 27, 2011

/s/
DORA L. IRIZARRY
United States District Judge